**In re ROHNERT PARK AUTO PARTS, INC., Debtor.**

**SEAPORT AUTOMOTIVE WAREHOUSE, INC., Appellant,**

v.

**ROHNERT PARK AUTO PARTS, INC., Appellee.**

**BAP No. NC–89–1246 VMeR. Bankruptcy No. 1–88–01197.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted July 20, 1989.

Decided May 9, 1990.

---

Lawrence J. Rockwell, Oakland, Cal., for appellants.

David N. Chandler, Santa Rosa, Cal., for appellees.

Before VOLINN, MEYERS and RUSSELL, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

Seaport Automotive Warehouse, Inc. ("Seaport") appeals the order confirming

Debtor's plan of reorganization on the grounds that the plan impermissibly enjoins creditors from proceeding against the Debtor or co-debtors of the Debtor pending completion of the plan. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtor/appellee, Rohnert Park Auto Parts, Inc. ("Rohnert") was a partnership of individuals prior to April 29, 1985, when it became incorporated. Seaport operates various warehouses from which it wholesales automotive parts and supplies. Seaport sold goods to the individual partners and partnership on open account from 1978 through December, 1985. It was unaware of the debtor's incorporation until November, 1985. Seaport was unwilling to sell goods to the new corporation unless the individuals who were the principals of the corporation personally guaranteed the corporation's obligations. No such guarantees were made.

Seaport initiated an action in state court to collect amounts due for goods sold and delivered to the individual partners and their partnership. Named defendants were Ben G. Collins, Carl A. Moore, and Rohnert Park Auto Parts, Inc. Collins and Moore are shareholders of Rohnert. In the state court action, Seaport attached assets of the individual defendants including the stock they owned in Rohnert.

Within an hour of the state court granting Seaport's writ of attachment, Rohnert filed its Chapter 11 petition. The petition listed Seaport as an unsecured creditor with a disputed claim in the amount of $102,000.00. December 16, 1988, was set by the court as the deadline for filing claims. Seaport did not file its proof of claim until January 30, 1989.

Rohnert obtained approval of its disclosure statement and sought confirmation of a proposed plan of reorganization ("the Plan"). The deadline for filing written objections to the Plan was January 31, 1989.

The proposed Plan contained the following provision:

7.05 Pending completion of the Plan, creditors shall be restrained and enjoined from foreclosing security interests in property or security of the Debtor or co-debtors of the Debtor, and taking or employing any legal action against the Debtor or a co-debtor of the Debtor.

Seaport submitted a ballot voting for the Plan, and at or about the same time, January 30, 1989, filed its proof of claim, which included the following language:

This claim is made against the debtor based on the debtor's claimed succession to the obligations due Seaport Automotive Warehouse Inc. ("Seaport") from third parties (to wit, shareholders of the debtor). This claim is made to permit Seaport to participate in the distribution proposed by debtor in its Plan of Reorganization filed November 10, 1988. Neither this proof of Claim, Seaport's vote in favor of debtor's Plan, or Seaport's acceptance of the Plan's distribution to Seaport constitute a waiver of or admission as to Seaport's claims against others not parties to this proceeding.

Seaport's motions to have its proof of claim deemed timely filed were denied.

Seaport also raised an oral objection based on the provisional language in its claim to Section 7.05 of the Plan at the confirmation hearing on February 3, 1989. The first confirmation hearing was continued to March 3, 1989 for a determination of feasibility. Prior to that hearing, Seaport filed a written response to the Plan in which it sought to have the Court amend the Plan to delete portions of Section 7.05 by removing any reference to a stay respecting (1) co-debtors of the debtor, (2) securities of co-debtors of the debtor (including shares/securities of Rohnert Park held by co-debtors), and (3) security interests not held by the debtor.

At the March 3, 1989 confirmation hearing, the Court determined that it would not consider Seaport's written objection due to its late filing and the fact that Seaport had submitted a ballot in which it voted for the Plan. The Court did acknowledge that the provision of Section 7.05 of the Plan was questionable under the law and might be

ineffective, but stated it was not making a ruling on the validity of that section. The Court further stated that whether Section 7.05 was binding on Seaport was an issue subject to litigation if it ever arose. The Court confirmed the Plan without modification, and entered an order of confirmation on March 9, 1989. This appeal followed.

## ISSUES

1. Whether a creditor has standing to appeal the Bankruptcy Court's Order of Confirmation of a Plan of Reorganization, where that creditor has no outstanding claim against the Debtor.

2. Where a creditor voted to accept the plan prior to the court's deadline and the court ruled that creditor's subsequent objection to the Plan was filed twenty-three days late, did the Bankruptcy Court exceed its jurisdiction in confirming the Debtor's Chapter 11 reorganization plan which enjoined creditors of the debtor from proceeding against co-debtors.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed *de novo*. *Magnoni v. Globe Inv. and Loan Co., Inc. (In re Globe Inv. and Loan Co., Inc.)*, 867 F.2d 556, 559 (9th Cir.1989); *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1469 (9th Cir.1988). The present appeal concerns the propriety of a certain Plan provision enjoining creditors from proceeding against third parties generally, and particularly as to appellant in light of the language in its proof of claim denying that its actions constitute waiver as to claims against third parties. The appeal further concerns the propriety of a creditor whose claim was held time barred being bound by provisions of a Plan relating to that creditor's rights against a nonparty. These issues present questions of law, and are therefore subject to *de novo* review. No factual issues are presented.

## DISCUSSION

### A. Standing

█ It is well settled that in order to have standing to appeal an order of the bankruptcy court, an appellant must be directly and adversely affected pecuniarily by the challenged order. *Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 843 F.2d 636, 641 (2nd Cir.1988) (citing *Cosmopolitan Aviation Corp. v. New York State Department of Transportation (In re Cosmopolitan Aviation Corp.))*, 763 F.2d 507, 513 (2nd Cir.) *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir.1983)). Rohnert asserts that Seaport has no standing to appeal the confirmation order since its claim was disallowed based on timeliness. Rohnert further asserts that Section 7.05 of the Confirmed Plan would not apply to Seaport because Debtor is a principal debtor and not a co-debtor of another relative to Seaport's claim.

Seaport argues that it has an interest in the order below based on the terms of the Plan and its standing as a creditor. (Albeit a time barred one; it has not appealed the order holding its claim to be late filed). Section 11.03 of the Plan provides in relevant part that:

Neither the filing of the Plan nor any statement or provision contained therein, nor the taking by any creditor of any action with respect to the Plan shall (a) be or be deemed to be an admission against interest and (b) until the Distribution Date be or be deemed a waiver of any right which any creditor might have against the Debtor or any other creditor of Debtor, and until the Distribution Date all such rights are specifically reserved.

Seaport contends this provision reserves all rights it may have, notwithstanding any other actions taken with respect to the Plan. Seaport also contends that the broad scope of the stay set forth in Section 7.05 provides it with standing both as a scheduled creditor and independently as a third party affected by the Plan's stay upon

foreclosure on securities of the debtor. Seaport suggests that its further enforcement of its state writ of attachment (by which it has attached securities in Rohnert held by third parties) is affected by the stay. Contrary to Rohnert's assertion that Section 7.05 applies only to creditors holding allowed claims, the Plan does not provide for such a limitation of Section 7.05.

We conclude Seaport has not waived its right to proceed against third parties outside the bankruptcy. The language in Section 11.03 of the Plan preserves Seaport's rights. The broad scope of the stay in Section 7.05 of the Plan directly and adversely affects Seaport's pecuniary interest. This is so particularly because the court's ruling as to the viability of Section 7.05 may well preclude or suspend litigation of this issue by Seaport against the co-debtors of the Debtor in state court. Under the present circumstances, Seaport has standing to bring this appeal.

### B. Propriety of Section 7.05 of Plan

■ Bankruptcy Code Section 1129(a)[1] provides in pertinent part that "[t]he court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title ..." Seaport contends that section 7.05 of the Plan does not comply with the Code due to the stay of proceedings against co-debtors. The bankruptcy court declined to examine the propriety of Section 7.05 for the reason that Seaport had not filed an objection to the Plan. Subsequent to the initial hearing on confirmation, and after the deadline for filing objections, Seaport filed an objection to section 7.05 of the plan. The court refused to consider the objection on the grounds that it was untimely.

■ Ordinarily, in the absence of an objection filed by a party in interest, the trial court has no independent duty to insure that the plan satisfies the requirements of the Code. Of course, the bankruptcy court has the discretion to inquire into the *bona fides* of any plan and must satisfy itself

when a plan attempts to alter one of the fundamental precepts of the Code. Here the plan attempts to enjoin creditors of the debtor from attempting to proceed against co-debtors. Such an effort challenges a basic tenet of the Code that Chapter 11 cases generally are for the protection of the debtor only and not to protect the debtor's principals or co-debtors. *See Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1375 (9th Cir.1985); *In re Condel, Inc.,* 91 B.R. 79, 82 (9th Cir.BAP 1988). Under such circumstances, the trial court has the duty to determine if such a plan is in accord with the Code.

### 1. Section 7.05 and 11 U.S.C. § 362

■ Seaport contends the Plan does not comply with 11 U.S.C. § 362(a). The automatic stay of Section 362 of the Code stays judicial proceedings against the debtor or property of the debtor's estate, but not against any other entity or any other entity's assets. In contrast to Chapter 13, there is no provision in Chapter 11 for applying the stay to co-debtors. *Cf.* § 1301.

As stated in *Credit Alliance v. Williams,* 851 F.2d 119, 121 (4th Cir.1988):

Congress knew how to extend the automatic stay to nonbankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts. *See* 11 U.S.C. § 1301(a). No such protection is provided to the guarantors of Chapter 11 bankrupts by § 362(a). [*See Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 126–27 (4th Cir.1983)].

Section 7.05 of the Plan prohibits creditors from foreclosing security interests in property or securities of co-debtors of the Debtor and from taking or employing any legal action against co-debtors of the Debtor. The automatic stay under section 362(a) only extends to debtors under the Code. Rohnert asserts that section 7.05 of the Plan does not propose to enforce section

---

**1.** Section and chapter references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise specified.

362(a) as to co-debtors. We hold that section 362(a) does not authorize stays to co-debtor's and therefore, section 7.05 of the Plan, insofar as it applies to co-debtors, is not authorized by section 362(a).

## 2. Authorization under 11 U.S.C. § 105

Both parties discuss the applicability of 11 U.S.C. § 105, which grants the court limited discretionary power to issue such orders as are "necessary or appropriate to carry out the provisions of [Title 11]." We assume *arguendo* the relevance of section 105.

The Ninth Circuit has held that a bankruptcy court lacks jurisdiction and power to enjoin permanently, beyond confirmation of a reorganization plan, a creditor from enforcing a state court judgment against the debtor's guarantors. *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621 (9th Cir.1989). The court stated:

> Section 105 empowers the court to enjoin preliminarily a creditor from continuing an action or enforcing a state court judgment against a nondebtor prior to confirmation of a plan. *In re A.H. Robbins Co.*, 828 F.2d 1023, 1026 (4th Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–03 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Furthermore, section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate. *See [In re Burstein–Applebee Co.*, 63 B.R. 1011, 1020–21 (Bankr.W.D.Mo.1986) ] ... *In re Askew*, 61 B.R. 87, 89 (Bankr.S.D.Ohio 1986) ... [Debtor], however, points to no case, and we are aware of none, in which a court permanently enjoined, past confirmation of a plan, a creditor from enforcing a state court judgment against a nondebtor guarantor of a contract liability.

*In re American Hardwoods*, 885 F.2d at 624–625.

The confirmed plan here enjoins creditors for five years from taking any action against co-debtors of the debtor. At issue is whether the bankruptcy court exceeded its jurisdiction and power in imposing the injunction of section 7.05.[2] The test in this circuit for jurisdiction is whether the requested injunction could conceivably affect the administration of debtor's plan, not whether the injunction protects a nondebtor after confirmation. *Id.* at 624.

Assuming *arguendo* that section 105 provides the court jurisdiction to enjoin actions against non-debtors, the court's power under section 105 is limited. While endowing the court with general equitable powers, section 105 does not authorize relief inconsistent with more specific law. *In re Golden Plan of California, Inc.*, 829 F.2d 705, 713 (9th Cir.1986) ("a bankruptcy court's equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act."); *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir.1983) ("Although a bankruptcy court is essentially a court of equity, its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code.") (citations omitted), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

## 3. Noncompliance with 11 U.S.C. § 524

Section 524(e) of the Bankruptcy Code provides:

> (e) except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

This section of the 1978 Bankruptcy Reform Act was a reenactment of Section 16 of the 1898 Act which provided that:

> [t]he liability of a person who is a co-debtor with, or guarantor or in any man-

---

**2.** Subject matter jurisdiction and power are separate prerequisites to the bankruptcy court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under section 105 encompasses the scope and forms of relief the court may order in an action in which it has jurisdiction. *In re American Hardwoods*, 885 F.2d 621, 624 (9th Cir.1989).

ner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt.

Act of July 1, 1898, ch. 541 § 16, 30 Stat. 550 (formerly codified at 11 U.S.C. § 34 (1976)). *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985). Confirmation of a plan of reorganization discharges the debtor from its debts, with certain exceptions which are inapplicable to this case. 11 U.S.C. § 1141(d)(1). In *Underhill,* the court held that the Bankruptcy Court had no power to discharge liabilities of a nondebtor pursuant to consent of creditors as part of the reorganization plan of the National Mortgage Exchange of Southern California. The *Underhill* court relied on *Union Carbide Corp. v. Newboles,* 686 F.2d 593 (7th Cir.1982) (per curiam), where the court held that the plan's release of a guarantor was not effective, despite the plan's acceptance by the creditors and its confirmation by the bankruptcy court. In discussing this issue, the court in *Underhill* made the following statement:

> When a bankruptcy court discharges the debtor, it does so by operation of the bankruptcy laws, not by consent of the creditors. *Union Carbide Corp. v. Newboles,* 686 F.2d 593, 595 (7th Cir.1982) (per curiam). *See also In re Kornbluth,* 65 F.2d 400, 401 (2nd Cir.1933). "The import of Section 16 [of the 1898 Act] is that the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities." *Union Carbide,* 686 F.2d at 595 (citing *R.I.D.C. Industrial Development Fund v. Snyder,* 539 F.2d 487, 490 n. 3 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977)); *Beconta, Inc v. Schneider,* 41 B.R. 878, 879 (D.C. E.D.Mich.1984).

*Underhill,* 769 F.2d at 1432.

■ In the present case, Section 7.05 of the Plan affects the liability of the co-debt-

ors of the debtor as to the debt owed to Seaport. Unlike the situation in either *Underhill* or *Union Carbide,* the creditor here did not consent to the release of the co-debtors except as such release may be inferred from Seaport's vote in favor of the plan. However, as previously indicated, Seaport raised an oral objection to Section 7.05 at the confirmation hearing. In addition, the proof of claim filed by Seaport contained clear language that it was not waiving its claims against others not parties to the bankruptcy.[3] In the present case, Seaport did not agree to any release of liability of co-debtors of the debtor. Although Section 7.05 does not release the co-debtor's from liability, the stay in 7.05 does affect the liability of the co-debtors of the debtor as to a debt owed by Rohnert to Seaport. Seaport is prohibited from proceeding against the co-debtors until the plan is completed. This affects the liability of the co-debtors for five years. Seaport expressly did not waive its claims against entities other than the debtor. Section 7.05 of the Plan does not comply with § 524(e) of the Bankruptcy Code.

## CONCLUSION

We are of the view that the appellant in filing a claim voicing its reservation of rights against the guarantors at or about the time of voting for the Plan, approved the Plan subject to such reservation and thereby did not accept the restraints set forth in Section 7.05 of the Plan. We also conclude that it would be inequitable to hold that a creditor whose claim is held time barred, and who is unable to benefit from the Plan, to be bound by a provision of the Plan enjoining pursuit of a claim against guarantors of the debtor.

Finally, we hold that under Section 1129(a) of the Code, the court had an independent obligation to determine that the

---

**3.** A waiver is the voluntary and intentional relinquishment of a known right, claim, or privilege. 28 Am.Jur.2d. *Estoppel and Waiver* § 154 (1966). Although the court below deemed the proof of claim to be not timely filed, the language in the proof of claim may be viewed as indicating that Seaport did not intend to relinquish any rights it may have against co-debtors of the debtor.

Plan complied with the provisions of Title 11. Section 7.05 of the Plan creates an improper stay against co-debtors. The court's power under 11 U.S.C. § 105 is limited by more specific provisions of the Code. The Plan does not comply with 11 U.S.C. § 524(e) as it affects the liability of entities other than the debtor. We REVERSE and REMAND for further proceedings consistent herewith.